IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TAMI WINN JONES,<br><br>                   Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br><br>                   Defendant. | MEMORANDUM DECISION AND<br>ORDER REMANDING ALJ'S DECISION<br><br><br><br>Case No.  2:15-cv-00516-EJF<br><br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Tami Winn Jones filed this action asking the Court to reverse and remand the Administrative Law Judge's ("ALJ") decision denying her application for supplemental security income under Title XVI of the Social Security Act ("Act").  (Compl., ECF No. 3.)  In accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to proceed before the undersigned Magistrate Judge.  (ECF No. 15.)  The ALJ determined that Ms. Jones did not qualify as disabled under 42 U.S.C. § 1382c(a)(3)(A).  (Administrative R. ("R.") 17, ECF No. 8.)  Having carefully considered the parties' memoranda, the complete record in the matter, and the arguments made at the hearing, the Court REMANDS the ALJ's decision for further analysis regarding Mr. Bagley, Dr. Brown, and Dr. Delcore's opinions.  The ALJ should also explain how the RFC accommodates Ms. Jones's mental impairments.  In addition, the ALJ should further explain his analysis of Ms. Jones's obesity and ensure that Ms. Jones's age did not factor into his RFC determination.

## PROCEDURAL HISTORY

On October 19, 2011, Ms. Jones protectively filed a Title XVI application for supplemental security income, alleging a disability onset date of September 22, 2011.  (R. 17.)

1

The Social Security Administration ("SSA") denied Ms. Jones's application on March 2, 2012, and again upon reconsideration on May 15, 2012.  (R. 17.)  On June 5, 2012, Ms. Jones filed a written request for a hearing.  (R. 17.)  On August 12, 2013, Ms. Jones appeared and testified at a hearing in front of an ALJ, along with Kenneth A. Lister, an impartial vocational expert ("VE").  (R. 17.)  On September 3, 2013, the ALJ found Ms. Jones not disabled under 42 U.S.C. § 1382c(a)(3)(A).  (R. 26.)  Ms. Jones requested review of the decision, which the Appeals Council denied on June 12, 2015, making the ALJ's decision the Commissioner's final decision for purposes of review.  (R. 1; see Doyal v. Barnhart, 331 F.3d 758, 759 (10th Cir. 2003).)  Ms. Jones subsequently filed a complaint with this Court on July 21, 2015 for review of the Commissioner's decision, and the Court held a hearing on June 28, 2016.  (ECF Nos. 3, 29.)

      Based on the five-step evaluation process, the ALJ found Ms. Jones has not engaged in substantial gainful activity since the alleged onset date and has the following impairments that he finds severe in combination:  "status post bilateral shoulder surgery; status post bilateral knee surgery; degenerative disc disease of the lumbar spine; and right knee fissuring of the posterior horn of the medial meniscus."  (R. 19.)  Moreover, the ALJ found Ms. Jones's depressive disorder severe only in combination with the pain from her physical conditions.  (R. 19.)  At step three, the ALJ found Ms. Jones did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 20.)  At step four, the ALJ found Ms. Jones possessed the residual functional capacity ("RFC") to perform sedentary work but required "a sit/stand option at will."  (R. 21.)  While Ms. Jones has no past relevant work, the ALJ found at step five that considering her age, education, work experience, and RFC, a significant number of jobs exist in the national economy

for Ms. Jones to perform. (R. 24.) As a result, the ALJ found Ms. Jones not disabled within the meaning of the Act. (R. 25.)

## STANDARD OF REVIEW

42 U.S.C. § 1383(c)(3) provides for judicial review of a final decision of the Commissioner. The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the Commissioner applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).[1] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence," and the court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (*quoting Zoltanksi v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commissioner uses the wrong legal standards, or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

---

[1] Courts apply the same analysis in determining disability under Title II and Title XVI. *See House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

## DISCUSSION

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. See 20 C.F.R. § 416.920; Williams v. Bowen, 844 F.2d 748, 750-53 (10th Cir. 1988); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

See 20 C.F.R. § 416.920. The claimant has the initial burden of establishing the disability in the first four steps. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy. Id.

I.      **The ALJ Erred by Failing to Explain Adequately Why He Afforded the Opinions of Mr. Bagley and Drs. Brown and Delcore Little Weight.**

    A.      **John Bagley's Opinions**

The record contains two documents from John Bagley, LCSW/LMFT—a letter describing his six-month treatment of Ms. Jones and a narrative form regarding Ms. Jones's mental status.  (R. 402, 403-06.)  Mr. Bagley opined in part that Ms. Jones "has difficulty with concentration and keeping on task for longer that [sic] 30 minutes," that her short-term memory falters at times, that "[s]he needs several naps during the day to keep her energy level high enough for [] simple tasks," that her PTSD has hampered her ability to function in social settings, and that her depression and anxiety make full-time work unrealistic.  (R. 402.)  The ALJ gave "[l]ittle weight" to these opinions, finding them "not consistent with the record and from a non-acceptable medical source."  (R. 19.)

Only opinions from "acceptable medical sources" may constitute "medical opinions."  SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); 20 C.F.R. § 416.927(a)(2).  Acceptable medical sources include licensed physicians, licensed or certified psychologists, and, for limited purposes only, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  *See* 20 C.F.R. § 416.913(a)(1)-(5).  Examples of non-acceptable medical sources include "nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists."  *Id.* § 416.913(d)(1).  When evaluating non-medical opinions from non-acceptable medical sources, the ALJ must still apply the § 416.927(c) factors that he would use to analyze a medical opinion from an acceptable source.  SSR 06-03p at *4-5.  These factors include the examining relationship, treatment relationship, the opinion's supportability, consistency with the record, the source's specialization, and any other factors that tend to support or contradict the opinion.  20 C.F.R. § 416.927(c)(1)-(6).  The Social Security Rulings explain that depending on

the facts of the case, "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." SSR 06-03p at *5.  The SSA recognizes that due to increasing health care costs, medical sources that do not qualify as "acceptable medical sources," including licensed clinical social workers, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *3.  Thus, opinions from these medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects." *Id.*  That Mr. Bagley does not qualify as an acceptable medical source does not automatically entitle the ALJ to afford his opinions little weight.

The ALJ also stated that he found the record inconsistent with Mr. Bagley's opinions but did not explain how.  (R. 19.)  "[A]djudicator[s] generally should *explain* the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Bowman v. Astrue*, 511 F.3d 1270, 1275 (10th Cir. 2008) (quoting SSR 06-03p at *6) (emphasis added). Without further discussion from the ALJ as to why he found Mr. Bagley's opinions inconsistent with the record, the Court cannot follow the ALJ's reasoning.

Moreover, some record evidence is consistent with Mr. Bagley's opinions, which prevents the Court from finding harmless error.  In a letter dated May 24, 2012, Dr. Brown stated Ms. Jones had "a history of depression, posttraumatic stress disorder secondary to being sexually abused." (R. 410.)  Dr. Brown further opined Ms. Jones had difficulties with memory, simple instructions, concentrating, handling stress, and often dealt with fatigue as a result of her depression.  (R. 410.)  As a result, Dr. Brown also doubted Ms. Jones's ability to work full time.

(R. 410.)  Similarly, in a physical RFC statement dated June 18, 2013, Dr. Delcore opined Ms. Jones would be off-task more than thirty percent of an eight-hour workday and would miss work or be unable to complete an eight-hour workday for five days or more of a given month.  (R. 471.)  While the ALJ gave little weight to Dr. Brown and Dr. Delcore's opinions, (R. 24), as set forth below, the ALJ fails to explain his weighting adequately.  Hence, the Court cannot fall back on that analysis to make up for the lack of analysis of Mr. Bagley's opinions.  Additionally, in the same form in which Ms. Jones reported taking care of her children, doing household chores, and occasional socializing, she also reported fatigue, the inability to concentrate for more than thirty minutes, and difficulty following written and spoken instructions.  (R. 159-60, 162.)

Hence, the Court agrees with Ms. Jones that the ALJ erred by failing to evaluate and weigh Mr. Bagley's opinions using the factors in § 416.927(c).  (*See* Pl.'s Opening Br. ("Pl.'s Br.") 9-10, ECF No. 17; SSR 06-03p at *4-5.)  Nevertheless, the Commissioner argued during the hearing that the ALJ properly assigned Mr. Bagley's opinions little weight because of the ALJ's findings made when considering Ms. Jones's credibility.  In the credibility analysis, the ALJ found the lack of restrictions in Ms. Jones's activities of daily living and social functioning undermine her claims of functional limitations.  (R. 23.)  At the hearing, the Commissioner pointed out that Ms. Jones reported retaining the ability to drive when needed, caring for her minor children, reading books, socializing with friends about once a month, and performing household chores—activities that contradict Mr. Bagley's opinion that Ms. Jones cannot concentrate for more than thirty minutes.  (*See* R. 22, 37-38, 158-61.)  However, the ALJ never articulated these reasons as the basis for his decision to discount Mr. Bagley's opinion.  The Court cannot search the record for evidence to support the ALJ's decision that he did not identify as a basis for his decision in the first place.  *Robinson v. Barnhart,* 366 F.3d 1078, 1084-85 (10th

Cir. 2004). For these reasons, the Court REMANDS the ALJ's decision for further analysis and explanation regarding the ALJ's rationale for giving Mr. Bagley's opinions little weight.

### B.    Drs. Brown and Delcore's Opinions

Ms. Jones also challenges the ALJ's evaluation of the opinions of Drs. Brown and Delcore, two of Ms. Jones's treating physicians. (Pl.'s Br. 11-16, ECF No. 17.) As mentioned above, Dr. Brown provided a narrative letter dated May 24, 2012, in which he stated Ms. Jones had a history of depression that results in fatigue and problems with concentration, focus, and handling stress. (R. 410.) Dr. Brown further opined that Ms. Jones has difficulty with memory and following simple instructions and that she could not work full time without special supervision. (R. 410.) As for her physical limitations, Dr. Brown opined Ms. Jones "cannot lift anything greater than 10 to 20 pounds from floor to waist" and emphasized that she "is unable to lift above her head at all." (R. 410.) Moreover, Dr. Brown opined that Ms. Jones's "[p]rognosis for improvement is poor" and that she can work up to one hour at a time with one hour breaks in between. (R. 410.) Similarly, on June 18, 2013, Dr. Delcore provided a physical RFC statement opining Ms. Jones could sit for two hours at a time for four total hours in an eight-hour workday, could stand or walk for one hour at a time for two total hours in an eight-hour workday, could frequently lift or carry five pounds and rarely fifteen pounds or more, needs a cane to stand and walk at times, would be off-task for thirty percent or more of a workday, would likely miss five days or more per month, and could not work full time. (R. 468-71.)

When evaluating a treating source opinion, the Regulations set out a two-part test for the ALJ to follow in determining what weight to afford the opinion. 20 C.F.R. § 416.927(c)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01. First, the ALJ must decide if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and* is not

8

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. 416.927(c)(2) (emphasis added). If the treating source opinion satisfies both criteria, then the inquiry ends, and the ALJ must give the opinion controlling weight. *Id.* If not, the ALJ must weigh the opinion using all the factors in § 416.927(c). *Watkins*, 350 F.3d at 1300. After considering these pertinent factors, the ALJ must give "good reasons" for the weight he ultimately assigns the treating source opinion that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

The ALJ gave "little weight to these opinions because they are not supported by objective evidence and are inconsistent with the record as a whole." (R. 24.) The ALJ offered three reasons for assigning little weight to these opinions: (1) the conclusions regarding whether Ms. Jones can work full time "have no probative value" because they touch on an issue reserved to the Commissioner; (2) "Drs. Brown and Delacore [sic] did not provide objective clinical or diagnostic findings to support their functional assessments"; and (3) "[t]hese opinions are also inconsistent with the objective findings . . . which show continued functional activities that are consistent with the ability to perform at least sedentary work." (R. 24.)

After reviewing the record, the Court finds the ALJ's proffered reasons for affording the doctors' opinions little weight problematic. First, that a physician opined on an issue reserved to the Commissioner does not automatically entitle the ALJ to attribute "no probative value" to such an opinion and afford it little weight as a result. While opinions from medical sources on issues reserved to the Commissioner deserve no controlling weight and no "special significance," such opinions "must never be ignored." SSR 96-5p, 1996 WL 374183, at *2-3 (July 2, 1996). Instead, the ALJ "must apply the applicable factors in [section 416.927(c)]" and "evaluate all the

9

evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* at *3. Thus the ALJ should not have ignored the doctors' conclusions regarding full time work.

The ALJ goes on to state, "Drs. Brown and Delacore [sic] did not provide objective clinical or diagnostic findings to support their functional assessments" but fails to elaborate. (R. 24.) The record indicates Dr. Brown treated Ms. Jones continuously since October 2008 for physical and mental ailments. (R. 304-76, 380-401, 418-67.) Dr. Brown's treatment notes indicate Ms. Jones suffered from depression since March 2010 with varying degrees of severity. (R. 322-76, 380-97, 418-67.) The notes indicate Dr. Brown's treatment of Ms. Jones's depression consisted mostly of summarizing her complaints and prescribing her therapy and anti-depressants. (*Id.*) Contrary to the ALJ's statement, Dr. Brown's notes indicate he reviewed Ms. Jones for depression using the PHQ-9 (Patient Health Questionnaire targeting depression[2]) and assessed her with depression in March 2010. (R. 322, 324.) Subsequently, Dr. Brown's records indicate that Ms. Jones had psychological testing in January 2012, (R. 391), and that Dr. Brown reviewed the results, which showed PTSD, major depression, and chronic anxiety (R. 386).[3] *See* 20 C.F.R. § 416.928(c) (defining medically acceptable diagnostic techniques as including psychological tests).

Additionally, Dr. Brown's physical evaluations have included numerous objective clinical tests such x-rays, CT scans, and ultrasounds. (R. 304, 306, 308-11, 334, 336, 388, 448-50.) Each of these tests included findings and impressions. (*Id.*) As previously mentioned, SSR 06-03p instructs the ALJ to "ensure that the discussion of the evidence . . . allows a claimant or

---

[2] *Patient Health Questionnaire (PHQ -9 & PHQ-2)*, AMERICAN PSYCHOLOGICAL ASSOCIATION, http://www.apa.org/pi/about/publications/caregivers/practice-settings/assessment/tools/patient-health.aspx (last visited Aug. 19, 2016).

[3] Ms. Jones should supplement the record with the actual testing if possible on remand.

subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03p at *6.  Because the ALJ fails to reconcile his finding with the objective tests Dr. Brown performed and his clinical findings, the Court cannot follow the ALJ's reasoning.  Such error prejudices Ms. Jones because Dr. Brown opined that Ms. Jones "is unable to lift above her head at all," has difficulty with memory, concentration, and fatigue, and can only work up to one hour at a time with one-hour breaks in between.  (R. 410.)  These limitations conflict with the ALJ's RFC determination and would change the jobs available to Ms. Jones if adopted.  (*Cf.* R. 410 with 21.)

Similarly, Dr. Delcore's treatment notes document numerous clinical tests he performed on Ms. Jones from 2009 to 2012, including radiographs, MRIs, and surgical operations that allowed visual inspection.  (R. 266, 271, 274, 276-94, 298-300.)  Each of these tests included diagnoses and assessments.  (*Id.*)  The ALJ again fails to reconcile the results of these objective tests with his statement that Dr. Delcore "did not provide objective clinical or diagnostic findings to support [his] functional assessments." (R. 24.)  Thus, without a more in-depth discussion, the Court cannot follow the ALJ's reasoning.  Such error prejudices Ms. Jones.  Dr. Delcore opined that Ms. Jones can sit for four hours in an eight-hour workday, can lift or carry only ten pounds rarely, would be off task for thirty percent or more of a workday, and would likely miss five days or more per month.  (R. 468-71.)  These findings conflict with the ALJ's RFC determination and would affect the jobs available.  (*Cf.* R. 468-71 with 21.)

Lastly, the ALJ found Drs. Brown and Delcore's opinions "inconsistent with the objective findings already discussed above in this decision which show continued functional activities that are consistent with the ability to perform at least sedentary work." (R. 24.)  Earlier in the decision, the ALJ summarized Ms. Jones's daily and social activities, such as caring for her children, driving, reading, shopping, preparing meals, doing household chores, and visiting

friends occasionally. (R. 22-23.) The ALJ found that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (R. 23.) While the ALJ discussed this factor more thoroughly, the Court cannot determine whether the ALJ's analysis of Drs. Brown and Delcore would have remained the same had he considered the other two factors appropriately.

Therefore, the Court REMANDS the ALJ's decision for further explanation of his reasons for assigning Drs. Brown and Delcore's opinions little weight. The ALJ should also ensure that the discussion reflects weighing these opinions in accordance with § 416.927(c).

## II. On Remand, the ALJ Should Explain How the RFC Accounts for Ms. Jones's Mental Limitations

Ms. Jones argues that the ALJ erred by failing to find her depression and anxiety severe impairments and accounting for these impairments in his RFC finding. (Pl.'s Br. 16-18, ECF No. 17.) The Court notes the ALJ found Ms. Jones's depression qualified as severe only "in combination with the pain complaints related to her physical conditions." (R. 19.) The combination of Ms. Jones's depressive disorder and physical pain also led the ALJ to find "mild to moderate limitation in concentration, persistence and pace." (R. 20.) However, the ALJ did not find any mental limitations in his RFC determination, noting "the records document no more than mild depressive disorder . . . with no more than mild limitations in functioning." (R. 23.) The ALJ never explains what those limitations include.

At step-five, the ALJ adopted the VE's testimony that someone of Ms. Jones's age, education, work experience, and RFC could perform three jobs, all of which the DOT classifies as unskilled. (R. 25.) However, whether Ms. Jones's mental limitations would allow her to perform unskilled work remains unclear. For instance, SSR 85-15 distinguishes the skill level of

a job from the difficulty an individual may have in meeting the demands of that job.  SSR 85-15, 1985 WL 56857, at *6 (January 1, 1985) ("A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job."); *see also* Groberg v. Astrue, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished) ("A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments.") (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)).  Because of the ALJ's lack of analysis on Mr. Bagley, Dr. Brown, and Dr. Delcore's opinions, all of which discussed Ms. Jones's mental limitations, and the lack of explanation of what types of limitations Ms. Jones has, the Court cannot follow the ALJ's analysis of Ms. Jones's mental limitations at the RFC stage.  Thus on remand, after further analyzing and explaining the weight given to Mr. Bagley, Dr. Brown, and Dr. Delcore's opinions, the ALJ should better explain how Ms. Jones's RFC accounts for her mental limitations and what those limitations include.

**III.  The ALJ Erred in His Evaluation of Ms. Jones's Obesity and in Using Ms. Jones's Age as a Factor in His RFC Determination.**

Next, Ms. Jones argues the ALJ erred by failing to evaluate the effects of her obesity on her RFC and by improperly using her age in the RFC analysis.  (Pl.'s Br. 19-20, ECF No. 17.) Ms. Jones takes issue with the ALJ's failure to discuss the impact of her obesity on her ability to sit, stand, walk, and lift, arguing that SSR 02-1p requires the ALJ to do so.  (*Id.* at 19.) Moreover, Ms. Jones contends the ALJ needed to engage in a more extensive analysis of her obesity aside from merely using Dr. Delcore's statement that she needed to lose weight in order to reduce her back pain to discount Ms. Jones's credibility.  (*Id.*)  In response, the Commissioner argues that while Ms. Jones's "obesity may have exacerbated her back pain, the record shows that Plaintiff was active during the relevant time period and objective tests regarding her back revealed minimal abnormalities."  (Def.'s Answer Br. 11, ECF No. 22.)  Thus, the Commissioner

13

argues the ALJ's RFC finding "accommodated for any obesity-related limitations." (*Id.* at 10-11.)

The ALJ stated he "considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 02-01p" but found "no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning." (R. 19-20.) As a result, the ALJ found Ms. Jones's obesity did not constitute a severe impairment. (R. 20.) The ALJ later cited Dr. Brown's opinion that Ms. Jones needed to lose weight to reduce her back pain favorably in the RFC discussion as evidence of routine and conservative treatment since the alleged onset date. (R. 23-24, 482.) While these findings may not necessarily conflict, due to the uncertainty in the ALJ's weighing of the physicians' opinions, the Court will REMAND the ALJ's decision for a more complete discussion of the effect of Ms. Jones's obesity on her RFC, i.e. does her obesity exacerbate her back pain and affect her musculoskeletal functioning.

Ms. Jones also argues the ALJ improperly considered her age in making his RFC finding. (Pl.'s Br. 20, ECF No. 17.) The ALJ stated that "while the evidence suggest that functional limitations are warranted based on shoulder, knee and back impairments, the claimant is still a younger individual and these limitations do not render her disabled." (R. 23.) SSR 96-8p requires the ALJ to base his RFC findings solely on the claimant's impairments, rather than other factors such as "[a]ge and body habitus." SSR 96-8p at *2. Because "[t]he definition of disability in the Act requires that an individual's inability to work must be due to a medically determinable physical or mental impairment(s)," the Ruling indicates that "[t]he assessment of RFC must therefore be concerned with the impact of a disease process or injury on the individual." *Id.* at *2 n.5. The ALJ's statement here epitomizes what SSR 96-8p prohibits,

namely an assessment of RFC based in part on age.  Therefore, the Court holds the ALJ committed legal error by considering Ms. Jones's age in making his RFC determination.

**IV.     The ALJ Did Not Err in Relying on the VE's Testimony at Step-Five.**

Lastly, Ms. Jones argues the ALJ failed to support his step-five findings with substantial evidence.  (Pl.'s Br. 20-21, ECF No. 17.)  Ms. Jones cites *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999), for the proposition that where the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT"), the ALJ must elicit a reasonable explanation for the conflict from the VE before relying on that testimony to support a determination of non-disabled.  VEs may testify about information not included in the DOT, such as information "documented in some other acceptable source" or the requirements of a subset of a particular job type performed in specific settings.  *Haddock*, 196 F.3d at 1091-92.  When a VE's testimony conflicts with the DOT, the ALJ must resolve this conflict before relying on the VE's testimony and explain in his decision how he resolved the conflict.  *Id.* at 1091; SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).

Here, the record reflects that Mr. Lister identified three unskilled, sedentary occupations and their numbers in the national economy in response to the ALJ's question of whether a person with Ms. Jones's RFC could perform any jobs.  (R. 46.)  The VE then reduced the number of all three jobs available by seventy percent due to the sit/stand option.  (R. 46-47.)  The ALJ then ceased questioning of Mr. Lister and turned the questioning over to Ms. Jones's counsel.  (R. 47.)  In his decision, the ALJ stated he found Mr. Lister's testimony consistent with the information in the DOT.  (R. 25.)

Because the DOT does not discuss sit/stand options, many courts have held that a sit/stand option does not conflict with the DOT.  *See, e.g.*, *Zblewski v. Astrue*, 302 F. App'x 488,

494 (7th Cir. 2008) (unpublished) ("Because the *DOT* does not address the subject of sit/stand options, it is not apparent that [testimony based on a sit/stand restriction] conflicts with the *DOT*."); *Conn v. Astrue*, 852 F. Supp. 2d 517, 528-29 (D. Del. 2012) (holding "the VE's testimony and the DOT are not in conflict; the DOT simply does not address sit/stand options"). Instead, courts have found that a VE's testimony based on a sit/stand restriction provides "more specific information than is contained in the DOT . . . ." *See Seay v. Astrue*, No. 3:09-CV-01044, 2011 WL 780693, at *12 (M.D. Tenn. Feb. 28, 2011) (unpublished), *report & recommendation adopted*, No. 3:09-CV-01044, 2011 WL 977499 (M.D. Tenn. Mar. 18, 2011) (unpublished). The Court finds this reasoning persuasive because it accords with SSR 00-4p, which states:

> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A [vocational expert] or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR 00-4p at *3. SSR 00-4p therefore "recognizes and allows for the possibility that a VE might provide more specific information than is contained in the DOT." *Seay*, 2011 WL 780693, at *12. Accordingly, the Court holds the ALJ did not err in failing to question Mr. Lister about the seventy percent reduction due to the sit/stand option.

  Ms. Jones also alleges discrepancies between Mr. Lister's opinion and the opinion of her own VE, Ms. Nancy Hughes, that Ms. Jones argues "indicate the general unreliability in estimating job numbers using the outdated DOT." (Pl.'s Br. 21-23, ECF No. 17.) Now that Ms. Hughes's opinion is part of the record, the ALJ should address her opinion on remand and resolve any alleged discrepancies between her opinion and that of Mr. Lister's.

## CONCLUSION

For the foregoing reasons, the Court REMANDS the ALJ's decision for further discussion as to why he assigned Mr. Bagley, Dr. Brown, and Dr. Delcore's opinions little weight. The ALJ should expand his RFC findings to explain how the RFC accommodates Ms. Jones's mental limitations. Additionally, the ALJ should further explain his assessment of Ms. Jones's obesity and remove his consideration of age from his RFC determination.

DATED this <u>22nd</u> day of August 2016.

BY THE COURT:

_____
EVELYN J. FURSE
United States Magistrate Judge